UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| J.M., a minor, <br> KENDALL MILLS, <br>   Plaintiff, <br> v. <br>   <br> HERALD ELEMENTARY SCHOOL, <br> COLLINSVILLE PUBLIC SCHOOLS, <br> DANA KALBE, JEREMY HOGAN, <br>   <br>   Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )  Case No. 24-CV-00523-CDL <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

Before the Court are the Motions to Dismiss (Docs. 8, 9) brought on behalf of Defendants Herald Elementary School, Jeremy Hogan, and Dana Kalbe; and the Partial Motion to Dismiss (Doc. 10) brought on behalf of Defendant Collinsville Public Schools (CPS). Plaintiff filed responses to Doc. 8 and 10 but did not file a response to Doc. 9, the Motion to Dismiss and Brief in Support by Defendant Herald Elementary School.

**I.    Background**

Plaintiff Kendall Mills filed his Petition (Doc. 2-2), in state court on behalf of Plaintiff, his minor daughter, J.M., alleging claims under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act (for disability discrimination), Title VI of the Civil Rights Act for alleged racial discrimination, the Equal Protection Clause for alleged disparate treatment based on race and disability, the Individuals with Disabilities Education Act (IDEA), the Oklahoma Anti-Discrimination Act (OADA), and state law tort claims for intentional infliction of emotional distress (IIED) and negligence. (Doc. 2-2).

Mills has asserted these claims against J.M.'s elementary school, Herald Elementary; the school district, CPS; a school administrator, Dana Kalbe; and the school district superintendent, Jeremy Hogan. (Doc. 2-2).

Mills has claimed that Defendants discriminated against J.M. on the basis of her disability, anxiety, as well as her race, which is unspecified in the Petition. (Doc. 2-2 at 2–3). Mills has not clearly identified any specific acts of discrimination, although he alleges that J.M. was "told to play with play-dough while other students engaged in lessons." (*Id.* at 2). Mills alleges "a pattern of discriminatory treatment, including being isolated in class and deprived of educational opportunities." *(Id.)*. Mills asserts that the alleged discrimination coincided with J.M.'s parents' challenges to Kalbe's recommendation that J.M. "be placed in transitional first grade rather than advancing with her class," or in other words, when J.M.'s parents objected to her being held back. (*Id.*). The Petition does not indicate whether J.M. was actually placed in transitional first grade, or held back, over her parents' objections. (*See id.*).

Mills has also alleged that "Defendants failed to provide J.M. with access to special education services that would address her disability," and that "Hogan acknowledged the district's history of racial discrimination but failed to take any corrective action or investigate the complaints brought by J.M.'s parents." (*Id.*). The Petition contains no factual allegations as to what acts were racially discriminatory against J.M. Additionally, Mills has alleged that J.M.'s "parents were provided with inconsistent and inaccurate test scores without evidence of the assessments allegedly justifying those scores." (*Id.* at 3). However, the Petition does not identify what kinds of tests those were, why Mills believes

2

Plaintiff's scores on those tests were inaccurate, or how such alleged inaccuracies bear on any of the eight causes of action provided in the Petition.

The ADA and Rehabilitation Act claims are premised upon J.M.'s alleged disability and entitlement to accommodations for anxiety, whereas the Title VI claim is based on alleged racial discrimination. The Equal Protection claim and OADA claims are premised upon race and alleged disability. Mills has also advanced a denial of a "free and appropriate public education" (FAPE) claim under the IDEA. For the IIED claim, Mills claims that Kalbe and Hogan committed IIED by "laughing at J.M.'s parents concerns and continuously subjecting J.M. to discriminatory treatment." (*Id*. at 5). Mills also claims the Defendants were negligent for breaching their duty to "provide [Plaintiff] with a safe, supportive, and non-discriminatory educational environment." (*Id*.). Only Mills's ADA and Rehabilitation Act claims specify that they are alleged against all Defendants; his IIED and Equal Protection claims specify Defendants Hogan and Kalbe; and the remaining claims do not include whom the allegations are against. While other Defendants have moved to dismiss all claims against them, CPS has not moved to dismiss Mills's negligence claim. (*See* Doc. 10).

After service of the Petition, CPS removed the action to federal court on the basis of federal question jurisdiction. (Doc. 2 at 2). Having jurisdiction over this case pursuant to 28 U.S.C. §§ 636(c), 1331, and 1367, the Court finds that, as to all causes of action the Defendants have moved to dismiss, Mills has failed to state a claim upon which relief can be granted. Thus, the Petition is subject to partial dismissal as to those causes of action under Fed. R. Civ. P. 12(b)(6).

## II. Dismissal Standard

To survive dismissal, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The threshold for stating such a claim is plausibility: the complaint need not contain "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). In assessing a complaint, "[w]e must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## III. Discussion

Mills has asserted claims on behalf of J.M. against three kinds of defendants: individuals in their official and individual capacities, the elementary school, and a school district. The claims against the school cannot proceed, as the school is not itself a justiciable entity, capable of suing and being sued. The claims against the individuals, to the extent they are asserted against individuals in their official capacities, are duplicative of the claims against the district, and are therefore subject to dismissal. The claims against individuals

4

in their personal capacities are otherwise subject to dismissal for failure to state a claim. Lastly, the claims against the school district fail to state a claim upon which relief can be granted: Plaintiff's claims largely consist of conclusory allegations that do not pass muster under *Twombly / Iqbal*.

    A.    **Claims Against the School**

Mills has not filed a response to, nor does he appear to contest Defendant Herald Elementary's assertion that it can neither sue nor be sued—in other words, it is not a justiciable entity. (Doc. 9 at 2). "Every school district shall be a body corporate and shall possess the usual powers of a corporation," which includes the capacity to "sue and be sued." OKLA. STAT. tit. 70, § 5-105. The statute does not extend this power to individual schools within a school district, a point which Mills has not contested by filing a response. As such, Herald Elementary cannot be sued separately from its school district, and the claims against Herald Elementary school must be dismissed for failure to state a claim. *See Silagyi v. Ind. Sch. Dist. No. 12, Okla. Cnty., Okla.*, 680 F. Supp. 3d 1236, 1242 (W.D. Okla. 2023) (collecting Oklahoma district court and Tenth Circuit authority dismissing claims against school boards given that they are not separate legal entities with the ability to sue or be sued).

    B.    **Claims against Kalbe and Hogan**

Mills has failed to state a claim against Defendants Kalbe and Hogan in either their official or individual capacities. Mills's official capacity claims are redundant and therefore warrant dismissal. Further, Mills has not contested Kalbe and Hogan's assertion that the Oklahoma Governmental Tort Claims Act (OGTCA), OKLA. STAT. tit. 51 §§ 151–172,

immunizes them against Mills's negligence claim. Mills has further claimed that Kalbe and Hogan are liable under a theory of IIED or § 1983 Equal Protection, but the Petition contains no facts that plausibly state any claim under either theory.

The official capacity claims against the individual Defendants are duplicative to those asserted against CPS. A suit under 42 U.S.C. § 1983 against a governmental entity and a suit against an official "acting in his or her official capacity are the same." *Watson v. Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988). Thus, "a plaintiff seeking to recover damages in an official capacity suit, or in a suit against a department of a governmental entity, must look to the governmental entity alone for payment." *Marino v. Mayger*, 118 F. App'x 393, 405 (10th Cir. 2004) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Because Mills is seeking damages from the individual defendants in their official capacities with the school district, those claims are identical to his claims against the district and are appropriately dismissed.

Mills purports to quote *Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont*, 85 F.3d 489, 494 (10th Cir. 1996) for the proposition that, "[w]here discovery may uncover additional facts implicating specific officials in constitutional violations, such claims are not redundant and dismissal is premature." (Doc. 13 at 3). That quote does not appear in that case.[1] Mills's argument is unavailing in any event, as there has been no explanation for

---

[1] Counsel for Plaintiff admitted at a show cause hearing to having submitted this and other false quotes without verifying their authenticity. Plaintiff's response briefs (Docs. 13, 16) contained thirteen quotations that were either materially altered from language in their purported source or were otherwise not found in the authorities cited. Plaintiff's counsel explained that the citations were provided by a subordinate who obtained them from a legal research service. He assured the Court that, going forward, his firm would implement

6

including the official capacity claims against the individual Defendants when CPS is the appropriate entity for such claims.

With respect to the claims against them in their individual capacities, Mills does not directly contest Defendants' contention that the GTCA bars the negligence claims against Hogan and Kalbe. Mills has only argued that claims of intentional misconduct fall outside the GTCA's scope, ignoring his claim of negligence. (Doc. 13 at 8). "The GTCA generally precludes naming of individual state employees for tort claims arising in the scope of their employment." *I.T.K. v. Mounds Pub. Schs.*, 451 P.3d 125, 130 (Okla. 2019) (citing *Harmon v. Cradduck*, 286 P.3d 643, 650 n.20 (Okla. 2012)) (noting lack of challenge to dismissal of tort claim against school bus driver as an immune employee under the GTCA). Kalbe and Hogan are both employees of the school district who fall under the GTCA's general preclusion against suit in tort, and the conduct Mills has alleged to be negligent, "failing to provide [J.M.] appropriate accommodations, educational services, and by engaging in discriminatory practices," (Doc. 2-2 at 5), consists of acts allegedly undertaken in the scope of their administrative roles. Mills has not contended otherwise, and his claims of negligence against Defendants Kalbe and Hogan are thus appropriately dismissed.

Mills asserts that the IIED claim is an "intentional act" that falls outside the GTCA's grant of immunity, and the Court agrees. *See Hawkins v. Smith*, No. 11-CV-372-GKF-TLW, 2012 WL 13186883, at *4 (N.D. Okla. Feb. 2, 2012) (providing Oklahoma case law to

---

stricter protocols for ensuring the accuracy of court submissions, and he offered his sincere apologies for the mistake. Accepting his apology, without condoning his conduct, the Court did not issue any sanctions. (Doc. 20).

7

show that IIED cannot be committed in "good faith" and so cannot be committed in the scope of employment as to fall under the GTCA).

Mills alleges that Kalbe and Hogan committed IIED against J.M. by "laughing at J.M.'s parents' concerns and continuously subjecting J.M. to discriminatory treatment." (Doc. 2-2 at 5). These general allegations do not suffice to plausibly state any claim for IIED. Under Oklahoma law, IIED claims are governed by the narrow standards set forth in the Restatement (Second) of Torts § 46. *Gaylord Ent. Co. v. Thompson*, 958 P.2d 128, 149 (Okla. 1998). In *Breeden v. League Servs. Corp.*, 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only were the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* at 1376 (quoting Restatement (Second) of Torts § 46 cmt. d).

To establish an IIED claim, the plaintiff must show that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (quoting *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002)). The trial court must assume a "gatekeeper role" and make an initial determination that the alleged conduct "may reasonably be regarded as sufficiently extreme and outrageous" to

maintain a claim for intentional infliction of emotional distress. *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 856 n.7 (10th Cir. 2005); *see also Gaylord,* 958 P.2d at 149.

The threadbare allegations of the Petition fall far short of alleging sufficient facts supporting any of the elements of an IIED claim, and they do not meet the plausibility threshold of *Twombly* and *Iqbal. See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). None of the factual allegations in the Petition describe any "conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Breeden*, 575 P.2d at 1376. Mills asserts that "determination of whether such conduct rises to the level of outrageousness is typically a jury question," (Doc. 13 at 8), citing *Trentadue.* The footnote he cites makes clear that the courts must first satisfy a gatekeeper role:

> Under Oklahoma law the trial court must assume a gatekeeper role with respect to intentional infliction of emotional distress claims by making a threshold legal determination that the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards. If the court concludes that reasonable persons could differ in the assessment of the disputed facts, the court submits the claim to the jury to determine whether the defendant's conduct should result in liability.

(citing *Breeden*, 575 P.2d at 1377–78).

Pursuant to *Breeden*, this Court must assume a gatekeeper role to gauge whether the alleged conduct reasonably meets the Restatement § 46 standards of outrageousness. In *Trentadue*, the defendants' conduct was "outrageous" in that prison officials, without adequate forewarning, showed a decedent's family his mutilated corpse. Mills's allegations

9

are far less severe than the facts in *Trentadue*, with their gravity being more alike to those in *Byrd v. Ind. Sch. Dist. No 8. Of Tulsa Cnty.*, Case No. 23-cv-00404-CDL, 2024 WL 4350800 (N.D. Okla. Sep. 30, 2024). In that case, the court found no outrageous conduct had occurred where school officials excluded the minor Plaintiff from the school football team based on false allegations of sexual misconduct and made disparaging remarks to the parent about the child. Mills has not alleged conduct sufficiently outrageous to a reasonable person as to state a claim for IIED, and so his claim must fail.

A Plaintiff advancing IIED must also allege facts to show that "the distress inflicted is so severe that no reasonable man could be expected to endure it." *Durham v. McDonald's Rests. of Okla., Inc.*, 256 P.3d 64, 68 (Okla. 2011) (quoting Restatement (Second) of Torts § 46 cmt. j). In determining the severity of distress, courts consider its duration and intensity. *Id*. The bar here is also high: Oklahoma courts have found that such distress is not present even where the plaintiff required medical intervention for symptoms such as stomach sickness or anxiety resulting from the defendants' conduct. *Mengert v. United States*, 120 F.4th 696, 713 (10th Cir. 2024) (citations omitted). An example of distress sufficiently intense and persistent to raise a jury question under IIED comes from *Durham*, where the Plaintiff "'became depressed and introverted' and 'wouldn't go outside, slept all day and had to be homeschooled'" over an extended period of time. *See id*. (quoting *Durham*, ¶ 15, 256 P.3d at 68). Mills's Petition is devoid of factual allegations demonstrating any severe emotional distress, further warranting dismissal.

Mills's Equal Protection argument suffers from a similar defect. To advance a § 1983 Equal Protection claim based on a "class-of-one"—where the Plaintiff alleges that a

government official has acted against the Plaintiff individually—the Plaintiff must allege that (1) "others, 'similarly situated in every material respect' were treated differently" and that (2) "this treatment was without rational basis." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202 (10th Cir. 2006)). The pleading burden to state such a claim is substantial, as it is "imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004). Rather than providing a specific and detailed account, however, Mills's allegations are purely conclusory: "Defendant Kalbe and Defendant Hogan, acting under color of state law, violated J.M.'s constitutional rights under the Equal Protection Clause of the Fourteenth Amendment by subjecting her to disparate treatment based on her race and disability." (Doc. 2-2 at 4). Mills's preceding allegations lack *any facts* to meet the *Twombly / Iqbal* pleading standard. Accordingly, the Equal Protection claim is also subject to dismissal.

    **C.**    **Claims Against the School District, Kalbe, and Hogan**

The claims that remain to be addressed against the School District, Kalbe, and Hogan are a myriad of statutory claims. Of these claims, all but one concern Plaintiff's civil rights not to be discriminated against on the basis of her race or disability. As will be discussed, Mills has failed to allege facts that demonstrate a plausible entitlement to relief under any claim of discrimination. The remaining claim is denial of FAPE under the IDEA, which cannot proceed as Mills has not exhausted the administrative remedies to confer jurisdiction over that claim in court.

Each of Plaintiff's civil rights claims suffer from a similar defect: Mills makes no non-conclusory allegations that Defendants were motivated by Plaintiff's race or disability in committing the alleged discriminatory acts. The Petition also does not include any particular factual allegations of any discriminatory acts other than the assertion that J.M. was "told to play with play-dough while other students engaged in lessons." (Doc. 2-2 at 2). Given the scarcity of factual content in Mills's pleading, his discrimination-based claims cannot go forward.

To state a claim as to survive 12(b)(6) dismissal under the ADA, the Rehabilitation Act, or Title VI, a plaintiff must allege facts to show that there was a discriminatory act taken on the basis of Plaintiff's protected trait—as alleged in the Petition—her race or disability. *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) ("To state a claim under Section 504 [of the Rehabilitation Act], 'a plaintiff must prove. . . (3) that he was [discriminated against] solely by reason of his handicap. . . .'" (second alteration in original)) ("To state a claim under Title II [of the ADA], the plaintiff must allege that '. . . (3) [her] exclusion, denial of benefits, or discrimination was by reason of a disability.'") (citations omitted); *Byrd*, 2024 WL 4350800, at *6 (citing Tenth Circuit authority to explain that the Title VII proof scheme is used in Title VI claims, and so to "establish discrimination in violation of Title VI, a plaintiff generally must show that. . . (3) the circumstances 'giv[e] rise to an inference of' intentional discrimination") (citations omitted). While there is no dearth of contention in Mills's Petition that the Defendants discriminated against Plaintiff on the basis of her race and disability, factual assertions supporting these contentions are remarkably absent.

Mills disagrees, arguing that "Defendant incorrectly asserts that the Plaintiff has not demonstrated discrimination based on [Plaintiff's] race or disability. The Petition provides specific examples of disparate treatment, including biased placement recommendations, retaliatory responses to parental advocacy, and procedural irregularities." (Doc. 16 at 2). Missing from Mills's list of "specific examples," unfortunately, are any specific examples. Mills has neither alleged nor directed the Court's attention to the pleading of any facts to show that Defendants committed any discriminatory acts on the basis of Plaintiff's race or disability, or that any such acts give rise to an inference of discrimination. Plaintiff's race is not even indicated anywhere in the Petition. Accordingly, Plaintiff's causes of action under the ADA, the Rehabilitation Act, and Title VI are subject to dismissal for failure to state a claim against Defendants CPS, Kalbe, and Hogan.

Defendant CPS contends, and Plaintiff does not appear to contest, that the OADA does not create a private right of action for discriminatory practices. (Doc. 10 at 9–10). As applied to Mills's Petition, the Court agrees.[2] The OADA, as originally enacted, did not include a private right of action. *Sims v. Halliburton Co.*, 185 F.3d 875 at *6 (10th Cir. 1999) (finding no implied private right of action in the OADA). The legislature did, in 1990, add a provision to the OADA that expressly created a private right of action for individuals discriminated against on the basis of "handicap." *Id.*; OKLA. STAT. tit. 25 § 1901 (repealed 2011). However, that provision was repealed in 2011. Oklahoma Anti-Discrimination Act, ch. 270, sec. 21, § 1901, 2011 Okla. Sess. Law Serv. Ch. 270 (West).

---

[2] The OADA does appear to create a private right of action for employment-based discrimination, subject to administrative exhaustion. OKLA. STAT. tit. 25 § 1350.

Thus, while the OADA provision Mills seeks to invoke does generally prohibit discrimination on the basis of race by government-funded institutions, OKLA STAT. tit. 25 §§ 1401–1402, the right to enforce that provision has been reserved to the state. Finding no express private right of action in the OADA for the conduct alleged in Mills's Petition, and finding no reason to revisit prior decisions finding the statute implies no private right of action, this Court dismisses with prejudice Mills's OADA claims as futile.

Lastly, Mills has not contested Defendants' assertion that he has yet to exhaust his administrative remedies before pursuing his IDEA claim in federal court. Instead, he has responded with confusing legal argument that exhaustion does not bar his claim because that claim does not "challenge the content or adequacy of J.M.'s [IEP]" and so is "unrelated to the IDEA's guarantee of a FAPE," (Doc. 13 at 6), and that he has "alleged injuries that IDEA administrative remedies cannot adequately address." (Doc. 16 at 3). Mills cites to case law, but the quotes he provides are inaccurate, and the cases he cites are inapposite to his arguments.[3] "[B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be

---

[3]   Mills provided two non-existent quotes in support: "exhaustion is not required when the gravamen of the plaintiff's claim is something other than the denial of FAPE"; "[t]he dispositive question is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures. If so, exhaustion is required; otherwise, it is not." (Doc. 16 at 3–4). Neither case Mills purports to quote lends any support to his argument. *See Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154 (2017); *Cudjoe v. Ind. Sch. Dist. No. 12*, 297 F.3d 1058 (10th Cir. 2002). These cases do not inform the Court as to when a denial of FAPE claim can proceed absent exhaustion, but rather, they set out the standards for when a non-IDEA claim is premised upon injuries so similar to those redressed by the IDEA that the claim is preempted and subject to the same administrative exhaustion requirements as an IDEA claim.

14

exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l). Mills has not exhausted the procedures required to file a civil action under the IDEA, and so his IDEA claim is appropriately dismissed.

## IV. Conclusion

For the foregoing reasons, the Motions (Doc. 8, 9, 10) are **granted**. Mills's claims against Herald Elementary, his OADA claims as to all defendants, and his IDEA claims as to all defendants are dismissed with prejudice, as permitting amendment would be futile. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citation omitted) ("Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."). Mills's claims for violation of the ADA, the Rehabilitation Act, and Title VI of the Civil Rights Act as to all Defendants, and violation of the Equal Protection Clause, negligence, and IIED as to Defendants Kalbe and Hogan—are dismissed without prejudice. Mills may file an amended complaint realleging any cause of action not dismissed with prejudice by no later than October 14, 2025.

IT IS SO ORDERED this 30th day of September, 2025.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge